446 So.2d 1045 (1984)
Ruel A. GALBREATH, Petitioner,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, et al., Respondents.
No. 63203.
Supreme Court of Florida.
January 26, 1984.
Rehearing Denied April 5, 1984.
*1046 Harold D. Smith, Hollywood, for petitioner.
Gordon Dean Rogers of Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, Miami, for respondent, The School Bd. of Broward County, Florida.
Richard H. Frank, Mark F. Kelly and Richard T. Donelan, of Frank & Kelly, Tampa, for respondent, The Broward County Classroom Teachers Ass'n, Inc.
Phillip P. Quaschnick, Deputy Asst. Gen. Counsel, Tallahassee, for respondent, Public Employees Relations Com'n.
McDONALD, Justice.
This case is before us to review a district court decision, Galbreath v. School Board of Broward County, 424 So.2d 837 (Fla. 4th DCA 1982), which certified the following question as being of great public importance:
Where the certified bargaining agent retains contractual control over the arbitral step of the grievance procedure and it declines to process a grievance to arbitration because it believes the grievance to be without merit, is the public employer still obligated to arbitrate the dispute if the grievant submits it to arbitration because the certified bargaining agent has declined to "represent the grievant?
Id. at 838. This Court has jurisdiction under article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the negative and approve the decision under review.
Ruel Galbreath is a public school teacher in Broward County. His employer, the School Board of Broward County, and the Broward County Classroom Teachers Association are parties to a collective bargaining agreement. This agreement covers all teachers including those who, like Galbreath, are not members of the Classroom Teachers Association. Galbreath filed a grievance under the collective bargaining agreement in an attempt to secure payment *1047 for certain overtime work. The Classroom Teachers Association represented Galbreath through the first two steps of the three-step grievance procedure but refused to further process his grievance through the final arbitration step. The Classroom Teachers Association based this decision not on Galbreath's non-union status but rather on the lack of merit in his grievance. The school board then rejected Galbreath's demand for arbitration because the collective bargaining agreement gave control over the arbitration step to the Classroom Teachers Association. Galbreath subsequently brought unfair labor practices charges with the Public Employees Relations Commission against both the school board and the Classroom Teachers Association. The Public Employees Relations Commission summarily dismissed these charges and Galbreath appealed.
The district court affirmed the dismissal, holding that Galbreath could be foreclosed from individual arbitration under section 447.401, Florida Statutes (1979). In affirming, the district court adopted the majority opinion of the Public Employees Relations Commission in Heath v. School Board of Orange County, 5 FPER 10074 (1979), and the "Declaratory Statement" portion of In re Leon County School Board, 7 FPER 12286 (1981). We agree with the district court and approve the following portions of In re Leon County School Board, set out in the appendix of the opinion under review, as dispositive of the issues presented in the certified question.
A union's right to exclusivity over the administration of a collective bargaining agreement includes not only the right to settle a grievance short of arbitration, but also the right to decline to process a grievance when it believes the grievance lacks merit. In either case, the union is deemed to have represented the grievant even though the grievance was not pursued to the final stage of the procedure, binding arbitration. Once the bargaining agent chooses to represent a grievant, regardless of the grievant's union membership status, the manner with which it handles the grievance, including a decision not to process the grievance for lack of merit, is subject to the statutory duty of fair representation. See Heath v. School Board of Orange County, 5 FPER ¶ 10074 (1979); Gow v. AFSCME, Local 1316, 4 FPER ¶ 4168 (1978).
However, unlike other jurisdictions, Florida law permits a certified bargaining agent to refuse to represent a grievant who is not a member of the certified organization. Section 447.401, Florida Statutes (1979), provides, in pertinent part:
All public employees shall have the right to a fair and equitable grievance procedure, administered without regard to membership or nonmembership in any organization, except that certified employee organizations shall not be required to process grievances for employees who are not members of the organization. (Emphasis added)
The Commission has concluded that this provision does not serve as a limitation upon the certified bargaining agent's exclusive right of representation. Heath v. School Board of Orange County, 5 FPER ¶ 10074 at 92. Rather, the proviso simply affords the organization the right to determine whether it desires to exercise its right of exclusive representation on behalf of nonmembers.
When a certified bargaining agent declines to represent a grievant because he or she is not a member of the certified organization, the grievant is entitled to pursue the grievance to arbitration, and the public employer is under a concomitant obligation to process the grievance in accordance with the terms set forth in the agreement. See generally, Blanchett v. School Board of Leon County, 378 So.2d 68 (Fla. 1st DCA 1979); Manatee County Municipal Employees Local 1584 v. Manatee County School Board, 6 FPER ¶ 11188 (1980). Therefore, the grievant's right to a fair and equitable grievance procedure mandated by Section 447.401 is protected by allowing the grievant to either represent himself or to *1048 seek outside representation, for the purpose of pursuing the grievance in accordance with the procedures set forth in the collective bargaining agreement.
... Our rejection of the proposition that Section 447.301(4) guarantees an individual unfettered access to the arbitral process is supported by the substantial weight of authority in other jurisdictions interpreting statutory provisions which are identical in all material respects to Section 447.301(4) in both language and policy. Heath v. School Board of Orange County, 5 FPER ¶ 10074 at 91-93; Maggs v. PLRB, 11 PPER ¶ 11103 (Pa. Comm.Ct. 1980)... . [W]e find it patently illogical that the Legislature would have adopted practically verbatim the language of a long standing federal statute but have intended an interpretation which is exactly the opposite of the interpretation given the federal statute as long ago as 1944. As we have previously noted, the policy considerations which underlie the interpretation of the federal statute apply with equal force to the Florida public sector collective bargaining scheme.
It is inconsistent to require, on the one hand, an exclusive bargaining agent to fairly represent all bargaining unit employees in collective bargaining negotiations and administration of a collective bargaining agreement and, on the other hand, to allow individual employees to advance grievances which may assert an interpretation of that agreement contrary to that of the bargaining agent and possibly the employer. Under such a scheme, the bargaining agent's status as exclusive representative in the determination of wages, hours and terms and conditions of employment is emasculated because the employer would be required to process through arbitration every individual grievance upon request, regardless of merit. Such individual grievance processing is in effect individual negotiations between the employer and the employee regarding the subject matter of the grievance. The Florida courts have long recognized the inherently destructive effect that individual negotiations between employer and employees have upon the right to collectively bargain. Pasco County School Board v. PERC, 353 So.2d 108, 4 FPER ¶ 4033 (Fla. 1st DCA 1977). Such individual negotiations are no less destructive simply because they occur during the grievance process rather than at the negotiating table.
There are also important practical reasons for limiting access to the arbitration machinery of contractual grievance procedures. Unlimited individual access would allow every employee, regardless of motive, to compel arbitration proceedings where the parties who negotiated the collective bargaining agreement deemed such proceedings unwarranted. The potential for harassment of the union and the employer, to the detriment of all concerned, from disgruntled individuals is very real. See e.g., Black-Clawson Co., Inc. v. International Association of Machinist, Lodge 355, 313 F.2d 179, 196 (5th Cir.1962). Furthermore, one need not be very experienced in labor relations to realize the attractiveness to a rival or a minority union of being able to compete with the incumbent union for [members] by indirectly processing grievances, regardless of merit, through an individual member. See McGuire Public Employee Collective Bargaining In Florida  Past, Present and Future, Fla.State L.Rev. 26, 101-02 (1973).
Finally, the policy we have adopted protects the taxpayer from the compulsory but unnecessary expenditure of public funds, a policy consideration not present in the private sector. If individual employees may, at their whim, compel arbitration of all grievances regardless of merit and contrary to the desires of the employer and the bargaining agent, significant public funds will be spent on expensive arbitration proceedings which would otherwise not be expended. The parties to the collective bargaining agreement would therefore have less funds available for truely [sic] meritorious grievances and the employer might *1049 be compelled to settle non-meritorious grievances contrary to a reasonable interpretation of the collective bargaining agreement to avoid expense, thereby establishing an erroneous precedent applicable to subsequent grievances. The interference with the statutory goal of promoting harmonious and cooperative relationships between the government and its employees who have chose to bargain collectively... is accurately summarized by the following language from Vaca v. Sipes, 386 U.S. 171 at 191-92, 87 S.Ct. [903] at 917-18 [17 L.Ed.2d 842]:
If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.
... the Commission's decision in Heath does not stand for the proposition that an individual has the unfettered right to advance a grievance through the contractual grievance procedure once the certified bargaining agent has exercised its exclusive right to discontinue processing the grievance based upon its good faith determination that the grievance lacks merit. As the above discussion demonstrates, such a conclusion is the antithesis of the concept of exclusiv[it]y embraced by our decision in Heath. 5 FPER ¶ 10074 at 92. Accordingly, where the parties['] collective bargaining agreement reserves to the certified bargaining agent the exclusive right to submit grievances to arbitration, a public employer is not obligated to process an individual's grievance to arbitration if the certified bargaining agent has declined to advance the grievance because of its belief that the grievance lacks merit. Indeed, if the public employer does process such a grievance to arbitration at the individual's request it might well violate Section 447.501(1)(a), (c), Florida Statutes (1979). Such action could constitute circumvention of the bargaining agent and a unilateral alteration of the contractual grievance procedure. Leon County CTA v. Leon County School Board, 6 FPER ¶ 11001 at 4.
424 So.2d at 841-43 (footnotes omitted, emphasis added by fourth district).
We therefore answer the certified question in the negative. We also find Galbreath's constitutional attack on section 447.401, Florida Statutes (1979), to be without merit. Accordingly, we approve the decision under review.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.